IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MIKE WOODS,** | |
| Plaintiff, | |
| v. | Case NO. 10 C 3853 |
| **OFFICER EVAN FERMAINT, OFFICER ROBERT MAAS, THOMAS DART,** in his Official Capacity as Sheriff of Cook County, and **THE COUNTY OF COOK,** a Municipal Corporation, | Hon. Harry D. Leinenweber |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion for Summary Judgment. For the reasons stated herein, the Motion is granted in part and denied in part.

**I.  BACKGROUND**

The following facts are agreed upon by the parties, unless otherwise indicated.

On April 2, 2010, Plaintiff Mike Woods ("Woods") was an "up and coming" chief of the Vice Lords gang and was being held in Cook County Jail's Division 10, Tier 3-A.  He was one of three or four Vice Lords who were greatly outnumbered on the tier by members of a rival gang, the Gangster Disciples, who comprised essentially the remainder of the tier population.  Exactly how many people the remainder constituted was not specified, but Defendant Officer

Robert Maas ("Maas") testified the tier can hold 48 inmates and half of them can be out of their cells in the tier's common area at a time.

Maas was supervising inmates on the 3-A Tier that day, but went to lunch at approximately 11:45 a.m. or 12:00 noon. He was relieved by Defendant Officer Evan Fermaint ("Fermaint"). A short time later, Fermaint left the tier to provide assistance to another officer and returned in approximately 10 minutes.

While Fermaint was gone, several Gangster Disciples attacked Woods and two other Vice Lords, including Jerome Moore ("Moore"). Woods was stabbed multiple times. Fermaint testified that when he returned he saw evidence that a fight had occurred and he felt it might soon resume, so he called for other officers. Moore, in a written statement, said Fermaint at that point did not call for assistance. All parties agree that when the fight did resume shortly after Fermaint's return, he issued a "10-10" alarm over his radio, signaling a fight was in progress. Backup soon arrived to separate the inmates.

Woods alleges a violation by both Maas and Fermaint of his Fourteenth Amendment rights under 42 U.S.C. § 1983 for failing to protect him while in custody. He also sues Sheriff Tom Dart ("Dart") and Cook County (the "County") for indemnification. Although the initial Complaint named several other Defendants, Maas, Fermaint, Dart and the County are the only defendants

remaining in the Amended Complaint. Further relevant facts are discussed below.

## II. **LEGAL STANDARD**

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Windle v. City of Marion*, 321 F.3d 658, 660-661 (7th Cir. 2003). The record is reviewed in the light most favorable to the Plaintiff. *Ramsey v. Mellinger*, No. 97-4250, 1999 U.S. App. LEXIS 8993, at *5 (7th Cir. May 6, 1999). When a moving party supports a motion for summary judgment with affidavits or other evidence, the adverse party, by affidavits or other evidence, must set forth specific facts showing that there is a genuine issue for trial. *Id.*

## III. **ANALYSIS**

### A. Failure to Protect

The source of the Constitutional right at issue here is the Eighth Amendment's protection against cruel and unusual punishment, but because Woods was a pre-trial detainee, the Fourteenth, rather than the Eighth Amendment, applies. *Brown v. Budz,* 398 F.3d 904, 910 (7th Cir. 2005). However, there is little practical difference between the two standards in this instance and therefore § 1983 claims are to be analyzed under the Eighth Amendment test laid out in *Farmer v. Brennan*, 511 U.S. 825 (1994). *Id.*

To prevail on a claim of failure to protect, an inmate must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) that defendant-officials acted with "deliberate indifference" to that risk. *Id.* at 909.

In assessing the first factor, the exposure of a detainee to a sufficiently substantial risk of serious damage to his future health, such as a beating at the hands of a fellow detainee, constitutes serious harm. *Id.* at 910. A "substantial risk" includes risk attributable to 'highly probable' attacks. *Id.* at 911. A deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence in a detention facility. *Id.* at 913. However, a risk is not rendered general merely because it is not personal to plaintiff. *Id.*

In assessing the second factor, "a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 913 (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (internal ellipses omitted).

"It is well settled that deliberate indifference may be found though the specific identity of the ultimate assailant is not known in advance of the assault." *Id.* at 915. "[T]ypical deliberate indifference claims assert that a defendant-custodian failed to

- 4 -

take protective action after a plaintiff-detainee complained of a feared threat posed by rival gang members *or* a specific person." *Id.* (emphasis added).

### 1. *The Evidence Against Officer Fermaint*

Plaintiff Woods testified in his deposition that the morning of the attack he had been on the tier for approximately two weeks. At approximately 11:40 a.m., he testified, Vice Lords were yelling back and forth with Gangster Disciples. Officer Fermaint arrived on the tier at approximately 11:45 a.m. or noon, relieving Officer Maas, and Woods testified he spoke to Fermaint at that time. He informed him of the "hooping and hollering" and of the fact that he and the other two Vice Lords were vastly outnumbered on the tier by Gangster Disciples. "And I went out there and told him that they [Gangster Disciples] might try to jump on us." Defs.'s. Statement of Material Fact (the "SOMF"), Ex. E, at 34, ECF No. 65-5. Woods did not identify any specific potential assailants. "I just said GDs [Gangster Disciples]." *Id.* The deposition also resulted in the following exchanges:

> **Q.** Did you say [to Fermaint] that you were specifically threatened?
> **A.** At that time I did.
>
>      \*  \*  \*
>
> **Q.** And you told him [Fermaint] what exactly?
> **A.** It's a lot of tension in the air. And at the time it was like me and inmate Jeremy Moore was trying to get moved off the tier.

*Id.* at 34-35.

Defendants argue this does not adequately establish either that there was a substantial risk of serious harm or that Fermaint had been notified with enough specificity to guard against it.

The Court finds there was a substantial risk in leaving unsupervised a gang member who has requested transfer because a disproportionate number of opposing gang members have recently specifically threatened to beat members of his gang. As Defendant Maas himself testified, if he had been aware of such a situation and request, he would have let a supervisor assess and likely grant Woods' request for transfer.

The situation is akin to that in *Jones v. Sheahan*, Nos. 99-3669 and 01-1844, 2003 U.S. Dist. LEXIS 19804, at *14-15 (finding substantial risk in not segregating non-gang inmates from gang inmates). In *Jones*, the risk to non-gang members was due to gang members' feeling of being able to beat them without fear of retaliation. The same would be true of gang members who vastly outnumber their opponents.

Defendants point to other excerpts in the deposition where Plaintiff testified he wasn't personally threatened and at various points didn't feel threatened. But this goes to the credibility of Woods' testimony, not to the existence of testimony that Woods informed Fermaint of the specific threat of being vastly outnumbered by opposing gang members who were threatening violence.

Defendants are also incorrect that Woods never testified he requested the officers move him off the tier. Although subject to interpretation, his statement (in response to the question of what exactly he told Fermaint) that he and Moore were trying to get off the tier at the very least implies he specifically asked Fermaint to be moved. Defendants, of course, deny this conversation took place, but that is an issue of material fact, not one of law upon which the Court can issue summary judgment.

Defendants also contend that the above evidence does not establish that Fermaint was adequately advised of a specific threat, and that general worries about safety in prison, a naturally violent environment, do not adequately advise a defendant of a substantial risk. But Plaintiff testified he told Fermaint that he, as one of three Vice Lords, was specifically threatened by the numerous Gangster Disciples, and that he requested to be moved to another area. Awareness that a plaintiff is "a member of an identifiable group of prisoners for whom risk of assault was a serious problem" is enough for a jury to find deliberate indifference. *Brown*, 398 F.3d at 915.

### 2. *The Evidence Against Officer Maas*

The evidence against Officer Maas is entirely different, however. Woods testified Maas was on duty that morning before being relieved by Fermaint. When Maas was questioned about the shouted threats, this exchange occurred:

> **Q.** So, at the time that you heard this hollering back and forth between inmates, you didn't feel threatened at that point, right?
> **A.** No.
>
> **Q.** So you didn't tell *anybody* that you felt threatened obviously, right?
> **A.** No.
>
>                \*    \*    \*
>
> **Q.** So before any incident happens, do you see Officer Ferma[i]nt relieve Officer Maas?
> **A.** Yes.

Defs.' SOMF, Ex. E, at 30-32, ECF No. 65-5 (emphasis added). Woods then went on to testify that after Fermaint relieved Maas, Woods reported the threats to Fermaint. None of Woods' testimony established that Maas was made aware of any conflict or threat. To the contrary, the clear question "you didn't' tell *anybody*," and Woods' unequivocal "Yes" in response established that Woods did not tell anyone, including Maas, about threats until he informed Fermaint. *Id.*

Woods also points to Moore's affidavit as proof that Officer Maas had been notified of the brewing gang attack and its danger to Woods. But a close reading of Moore's affidavit shows only that Moore advised Officer Maas that only Moore himself, not Woods or Vice Lords in general, was being threatened. (*E.g.*, "*I* was having problems with the [Gangster Disciples]," "*I* needed to be moved," "*I* was in fear for *my* life," "The folks gang was gonna attack *me*," etc. Pl.'s SOMF, Ex. S, at 1-3, ECF No. 77, PageID 838-840

(emphasis added).) There is no indication that Moore made Maas aware of danger *to Woods* or the Vice Lords in general.

Woods points to his post-deposition affidavit that alleges he told Maas around 10:45 a.m. that he had heard such threats as early as 8:30 a.m. that he told Maas the Gangster Disciples were armed, and that Maas merely shouted generally to the tier not to start trouble because he didn't want to do any paperwork.

But the Court agrees with Defendants that this is a 180-degree contradiction to Woods' deposition and so must be disregarded as a "sham" deposition. *See Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996) ("[P]arties cannot thwart the purpose of Rule 56 by creating 'sham' issues of fact with affidavits that contradicted their prior depositions.").

Woods argues this affidavit is not in contradiction with his deposition, but merely elaborates on events about which he was not asked during his deposition. He argues he was not asked about Maas' involvement, and that he was an unsavvy plaintiff who did not know he could elaborate when asked at the end of his deposition if he had anything to add. The Court might credit this argument if the deposition and affidavit were reconcilable, but it finds there is just no way around Woods' clear enunciation that, at least up until the time the 11:40 a.m. threats were flying, he had not communicated threats to *anybody*, which necessarily includes Officer Maas. Since Woods' affidavit, in regards to Officer Maas, is

clearly inconsistent with his deposition testimony, it cannot be credited under *Bank of Illinois*. With the affidavit providing the only evidence of notification to Officer Maas, the Court must grant him summary judgment.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary judgment is granted as to Defendant Maas. It is denied as to the remaining Defendants.

**IT IS SO ORDERED.**

                                                Harry D. Leinenweber, Judge
                                                United States District Court

**DATE:** 8/17/2012